UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
UNITED STATES OF AMERICA

                               **MEMORANDUM OF DECISION**

    -against-

                               01 CR 1367 (RJD)

MARTIN AGUILAR,

            Defendant.
-------------------------------------------------X
DEARIE, Chief Judge.

Defendant Martin Aguilar was convicted of murder for hire, conspiracy to commit murder for hire, and murder in the course of a narcotics conspiracy, as well as several lesser offenses, in connection with the killing of Jose Fernandez. Though the government sought the death penalty, the jury declined to impose capital punishment, and Aguilar was sentenced to life in prison. Midway through his trial, Aguilar alleged that by providing him with certain information regarding one of his co-defendants on December 4, 2006, after his trial had begun, rather than at an earlier time, the government had failed to comply with its obligation under Brady v. Maryland, 373 U.S. 83 (1963). On this basis, Aguilar moved for a mistrial. In response, the government contended that the information at issue was neither suppressed nor within the scope of its Brady obligation. For the reasons described in this Memorandum of Decision, the Court found that no Brady violation had occurred, and denied defendant's motion.

## BACKGROUND

This ruling relates to a pretrial statement made by Quincie Martinez, Aguilar's co-

defendant and a cooperating witness, to an agent of the Federal Bureau of Investigation. During an interview in February 2005, many months before trial began, Martinez stated that on the day of Jose Fernandez's murder, Gilbert Caraballo, a co-defendant currently awaiting trial on the same capital charges Aguilar faced, told her that Aguilar had murdered Jose Fernandez because of a debt between Aguilar and Fernandez—a theory of the case that is arguably inconsistent with the government's claim that Aguilar murdered Fernandez in exchange for forgiveness of a drug debt owed by Aguilar to Caraballo.

The government disclosed Martinez's statement on December 4, 2006, before calling Martinez to testify. It informed Aguilar and the Court not only that Martinez had made the earlier statement, but also that the same morning, during a meeting in preparation for her testimony, Martinez had amended that statement. More specifically, she had told the government that she thought Caraballo had offered his explanation of the murder *not* on the day it occurred, as she had indicated earlier, but at some later time, "in relation to their cover-up story." Tr. 2441.

During Martinez's testimony before the jury, later the same morning, defendant's counsel asked her whether Caraballo had ever told her that Aguilar had killed Fernandez over a "money dispute or a debt" between Aguilar and Fernandez. Tr. 2462. Martinez answered that he had, without being specific as to when this occurred. Tr. 2462-64. She expressed no view as to whether Caraballo's statement to her had been a truthful account of the motive behind Fernandez's murder, or merely a cover story designed to shield Caraballo and herself.

On December 6, 2006, defendant requested a hearing to determine whether the government had violated its Brady obligation by failing to disclose Martinez's statement prior to trial. The Court granted this request, and on January 2, 2007 held such a hearing. Martinez

2

testified in camera regarding her prior statement. On direct examination by defendant's counsel, she confirmed that she had told the government in February 2005 that, at some time, Caraballo told her that Aguilar had murdered Fernandez over a debt between Aguilar and Fernandez. Tr. 25. She confirmed, as well, that she had informed the government at some time that her statement had been inaccurate, though she could not remember when this had occurred. Tr. 27-28. She also expressed uncertainty about whether her statement had, in fact, been accurate—that is, whether Caraballo had really made the claim she attributed to him, or not. Tr. 28-29.

On cross-examination, Martinez explained that she could not remember whether the notion that Aguilar killed Fernandez over a debt between the two of them was a story she invented herself, or a cover story she and Caraballo engineered together at some later time. Tr. 41-42. Either way, she claimed, the facts underlying that statement—that a debt had existed between Aguilar and Fernandez, and had motivated the killing—were false. At the time of Fernandez's murder, she claimed, no such debt existed. Tr. 33, 39-41.

Following Martinez's testimony, Aguilar moved for a mistrial. The Court denied the motion for the reasons explained below.

## DISCUSSION

The familiar holding of Brady is that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. In the Brady context, "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been

3

different." United States v. Bagley, 473 U.S. 667, 682 (1985). Brady "does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal . . . ." Kyles v. Whitley, 514 U.S. 419, 434 (1995). Rather, the defendant must show that the likelihood of a different verdict, had the contested material been disclosed, was "sufficient to undermine confidence in the outcome." Bagley, 473 U.S. at 682. A Brady violation includes three elements: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

Here, as noted above, Aguilar was the subject of three charges carrying a potential death sentence: murder for hire, conspiracy to commit murder for hire, and murder in the course of a conspiracy to distribute narcotics. He argued that Fernandez was "in no way a co-conspirator, a rival or a target of the charged conspiracies." Def.'s Letter of Dec. 19, 2006 at 2. Had he been able to prove that he killed Fernandez over a debt between himself and Fernandez, Aguilar claimed, rather than as a means of discharging a drug debt he owed to Caraballo, he would have avoided conviction on any of the capital charges. Thus, he contended, Martinez's statement was "indeed favorable" to him. Id. Aguilar claimed, as well, that the government's failure to disclose the statement until after the commencement of trial prejudiced him. Id.

The government responded that none of the three elements of a Brady violation was present in this case. It contended that Martinez's statement was not exculpatory, for two reasons: (1) had she been asked during her testimony whether the statement was true, Martinez would have testified that in fact it was a cover story; and (2) even if Aguilar could have used Martinez's

4

statement to prove that he killed Fernandez "at least in part" because of a debt between himself and Fernandez, doing so would have created an "alternative theory of liability," but would not have "vitiated the overwhelming evidence that the defendant killed Fernandez pursuant to an agreement with Caraballo . . . ." Gov't's Letter of Dec. 21, 2006 at 3. The government also insisted that Martinez's statement had not been suppressed, again offering two reasons: (1) the statement was disclosed prior to the start of defendant's case; and (2) the substance of the statement, if true, would have been known to Aguilar even without disclosure. Id. at 4. Finally, the government argued that there had been no prejudice to defendant, since it had disclosed Martinez's statement before she took the stand. Id. at 5.

The Court concluded that no Brady violation had occurred here, based on two findings. First, the statement at issue was not exculpatory. As defendant observed, the government's Brady obligation encompasses evidence that mitigates punishment, as well as guilt. 373 U.S. at 87. Thus, evidence tending to show that Aguilar killed Fernandez for a reason other than that proffered by the government might have been exculpatory for Brady purposes, since it might have helped Aguilar avoid capital liability.[1] However, as the government pointed out in its response to this motion, Martinez's testimony before the jury would have been that her statement was not, in fact, an accurate description of Aguilar's motive for killing Fernandez, but instead a cover story designed to shield Caraballo and herself. Indeed, she so testified during the in camera hearing on January 2. However confusing or inconsistent her testimony may have been

---

[1] Of course, it is far from certain that defendant could have avoided capital liability by proving that he killed Fernandez over a debt between himself and Fernandez, since Martinez also testified that Fernandez sold drugs for Caraballo, so that even in the absence of any debt between defendant and Caraballo, the government might have demonstrated that Fernandez's murder had occurred within the course of the charged narcotics conspiracy.

5

with regard to the origins of the cover story, she testified consistently that it had no basis in fact—in other words, that there was no debt between Aguilar and Fernandez. Thus eliciting further testimony on this issue would not have helped Aguilar convince the jury of an alternative motive for the killing.

Second, the statement at issue was not suppressed. Information is suppressed within the meaning of Brady only if it is "known to the prosecution but unknown to the defense." United States v. Agurs, 427 U.S. 97, 103 (1976). By contrast, "[e]vidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." United States v. LeRoy, 687 F.2d 610, 618 (2d Cir. 1982) (citations omitted). See also Leka v. Portuondo, 257 F.3d 89, 100 (2d Cir. 2001); United States v. Diaz, 922 F.2d 998, 1007 (2d Cir. 1990). Here, Aguilar contended that the government had suppressed Martinez's statement regarding *his own motive* for killing Fernandez. Had he known of the statement, Aguilar claimed, he might have presented the jury with a different rationale for the killing, undermining the government's case. Likely the most prudent course, for the government, would have been to disclose Martinez's allegedly exculpatory statement to defendant at the earliest possible opportunity, thus avoiding even the appearance of suppression. But if Aguilar killed Fernandez over a debt between himself and Fernandez, rather than over a debt between himself and Caraballo, as the government claimed, Aguilar himself surely had knowledge of that fact at every step of the way. Thus there was never any need for the government to inform him of it, and the government's failure to do so did not constitute

6

"suppression" within the meaning of Brady.[2]

## CONCLUSION

For the reasons just explained, defendant's motion for a mistrial was denied.

Dated: Brooklyn, New York
       October 31, 2007

s/ Judge Raymond J. Dearie
RAYMOND J. DEARIE
United States District Judge

---

[2]The Court notes that the timing of the government's disclosure, without more, would not have required the conclusion that no suppression occurred here, or that any suppression that did occur resulted in no prejudice to defendant. As the government observed, it disclosed Martinez's statement before defendant began his case. However, when a disclosure of potentially exculpatory evidence "is first made on the eve of trial, or when trial is under way, the opportunity to use [that evidence] may be impaired." Leka, 257 F.3d at 101.